RAÚL R. LABRADOR
Attorney General
State of Idaho

MARK W. OLSON, ISB #7555
Deputy Attorney General
Criminal Law Division
P.O. Box 83720
Boise, Idaho 83720-0010
Telephone: (208) 332-3099
Facsimile: (208) 854-8074
Email: mark.olson@ag.idaho.gov

Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| MARK DOUGLAS HUBER, | ) | |
| | ) | |
| Petitioner, | ) | CASE NO. 1:23-CV-00039-DKG |
| | ) | |
| vs. | ) | |
| | ) | BRIEF IN SUPPORT OF |
| RANDY VALLEY, | ) | RESPONDENT'S MOTION FOR |
| | ) | SUMMARY DISMISSAL |
| Respondent. | ) | |
| | ) | |

COMES NOW, Respondent, Randy Valley, ("state"), by and through his attorney, Mark W. Olson, Deputy Attorney General, Capital Litigation Unit, and hereby submits this brief in support of the Respondent's Motion for Summary Dismissal.

## BACKGROUND

In 2010, the state charged Huber with rape, I.C. §18-6101(1) or (4); and lewd conduct with a minor under sixteen years of age, I.C. § 18-1508, for conduct involving a 14-year old girl;

and the sentencing enhancement for repeat sex offenders, I.C. § 19-2520G.  (States lodging A-2, pp.40-42, 135-136.[1])

The case proceeded to trial.  (State's lodging A-3.)  The state district court (in Huber's initial post-conviction proceeding), would later summarize the most significant of the state's evidence against Huber as follows:  (1) the victim's detailed testimony about Huber's conduct and her identification of Huber as the perpetrator; (2) testimony from the emergency room doctor who treated the victim, and to whom the victim relayed her account of Huber's conduct; (3) testimony from the investigating officer, to whom Huber made admissions; (4) the testimony of a witness whom the victim described Huber's conduct to, and who observed Huber leaving a room the witness was told the victim had recently been in; and (5) photographs of the victim's injuries which corroborated her testimony  (State's lodging C-5, pp.68-77 (*see also* State's lodging A-3, pp.379-387, 394-403 (the prosecutor's closing and rebuttal arguments at trial summarizing the state's trial evidence).)  In addition to this evidence summarized by the state district court, the state also presented testimony from the victim that her father arranged the encounter between herself and Huber.  (State's lodging A-3, pp.201-229; *see* also pp.382-386).

The state also presented a report and expert testimony regarding DNA testing conducted following an examination of the victim, which included evidence of foreign DNA being recovered from the victim's body.  (State's lodging A-3, pp.271-280, 286-311.)  This evidence, however, was largely inconclusive with respect to the identity of the foreign DNA.  The state's expert witness could only testify that recovered samples were "consistent" with Huber, but could not establish an affirmative match due to the small amount of material recovered.  (Id.; *see also* State's lodging C-5, pp.77-81, 92 (state district court's summary of the DNA evidence).)  This

---

[1] When citing to pages of appellate clerk's records, or appellate briefs, the state refers to the page number of the electronic file, not the page printed on the records.

BRIEF IN SUPPORT OF RESPONDENT'S MOTION FOR SUMMARY DISMISSAL - 2

evidence did, however, indicate the presence of saliva and spermatozoa in the victim's genital area, which was consistent with the nature of Huber's conduct as described by the victim; and did not identify that any other individual was the source of the foreign DNA. (Id.; *see also* State's lodging A-3, pp.399-400.)

The jury found Huber guilty of both charged offenses, at which point Huber admitted to the applicability of the repeat sex offender sentencing enhancement. (State's lodgings A-2, p.134; A-3, pp.413-414.)

The trial court imposed concurrent unified 30-year sentences with 10 years fixed for each count. (State's lodging A-2, pp.189-192.) The court later granted the state's motion to increase the fixed portion of each sentence to 15 years, as required by the I.C. § 19-2520G sentencing enhancement. (State's lodgings A-2, pp.193-194, 250-253; A-4.) The trial court denied Huber's motion for reduction of sentence. (State's lodgings A-2, pp.198-200, 248-249; 250-255; A-4.) Huber filed two motions for a new trial, which were denied by the trial court in 2014 and 2019, respectively. (State's lodgings A-1, pp.44, 46-47; A-5, A-7.) He did not appeal from either denial.

On direct appeal, Huber challenged only the trial court's sentencing determination and denial of his motion for reduction of sentence. (State's lodging B-2.) The Idaho Court of Appeals affirmed Huber's judgment of conviction (State's lodging B-8), and the Idaho Supreme Court denied Huber's petition for review and entered the Remittitur (State's lodgings B-10; B-11).

In February 2015, while his direct appeal was still pending, Huber filed a *pro se* post-conviction petition. (State's lodging C-2, pp.30-210.) After the direct appeal concluded, Huber filed an amended post-conviction petition, and the state district court granted his request for the

*BRIEF IN SUPPORT OF RESPONDENT'S MOTION FOR SUMMARY DISMISSAL - 3*

appointment of counsel.[2]  (State's lodging C-3, pp.11-21, 37-38, 45-47, 55-56.)  In his amended post-conviction petition, Huber asserted actual innocence, and raised various ineffective assistance of trial counsel and other constitutional claims.  (State's lodging C-3, pp.11-21.)  Appointed counsel did not further amend the petition.

In support of his amended post-conviction petition, Huber, with the court's permission (State's lodging C-3, pp.72-74), conducted a deposition of his trial counsel (State's lodging C-3, pp.132-138).  Huber also sought the appointment of a DNA analyst.  (State's lodgings C-3, pp.86-100, 194-213; C-4, pp.18-19).  The state district court granted this request in July 2016.  (State's lodging C-4, pp.27-40.)  Almost two years later, in March 2018, Huber indicated an intent to submit expert DNA testimony from Dr. Greg Hampikian.  (State's lodging C-4, pp.90-104.)  Several months after that, Huber informed the court that he was still waiting on such testimony from Dr. Hampikian to become available. (State's lodging C-5, p.32.)  In the meantime, in April 2018, the state filed a motion for summary dismissal of Huber's post-conviction petition.  (State's lodging C-4, pp.117-119, 125-146.)  Finally, in December 2018, Huber submitted a report from Dr. Hampikian criticizing the state's DNA testing methods. (State's lodging C-5, pp.56-62.)

In January 2019, the state district court granted the state's motion to summarily dismiss Huber's post-conviction petition (State's lodging C-5, pp.66-95).  The court concluded that Huber failed to allege facts demonstrating he was entitled to relief on any of his claims.  (State's lodging C-5, pp.87-94.)  Among the flaws in Huber's petition, the court explained, were that the claims contained therein were conclusory and lacked factual foundation, that Huber's citations to the record were lacking or imprecise, that several of his claims were statutorily barred by I.C. §

---

[2] Initially-appointed counsel withdrew because of illness (State's lodging C-4, pp.50-54), and new counsel was appointed (State's lodging C-4, p.66).

BRIEF IN SUPPORT OF RESPONDENT'S MOTION FOR SUMMARY DISMISSAL - 4

19-4901(b) because they could have been raised on direct appeal, and that Dr. Hampikian's report as submitted by Huber was inadmissible because it was not verified by means of a declaration or affidavit as required by I.C.R.P. 56. (Id.) The court further observed that even had Huber presented evidence to support his assertions of deficient trial counsel performance, he did not, and could not, demonstrate Strickland[3] prejudice in light of the nature and strength of the state's evidence presented at trial. (State's lodging C-5, pp.90-93.) The court also denied Huber's subsequent motion for reconsideration. (State's lodging C-5, pp.102-104, 107-115).

In March 2019, after his petition had already been dismissed, Huber submitted an affidavit and "final" report from Dr. Hampikian (this report was similar, though not identical to, the previously-submitted report from Dr. Hampikian). (State's lodging C-6, pp.171-181.) The affidavit attested to the accuracy of the accompanying report; and both the affidavit and report contained criticisms of the state's DNA testing methods and the state expert witness's trial testimony. (Id.) The affidavit and report were submitted in support of Huber's consolidated second motion for reconsideration (I.R.C.P. 11.2(b)(1)), motion to alter judgment (I.R.C.P. 59(e)), and motion for relief from judgment (I.R.C.P. 60(b)). (State's lodgings C-6, pp.161-167; C-8, pp.29-36.) After a hearing (State's lodging C-9, pp.12-49), the state district court denied Huber's various motions for post-judgment relief (State's lodging C-8, pp.53-65). Citing and applying the various rules of civil procedure pursuant to which Huber sought relief, the court found that Huber's newly-submitted materials did not change its previous determinations, could have been submitted prior to its initial judgment dismissing the post-conviction petition, and that the I.R.C.P. 59(e) motion was additionally untimely,  (State's lodging C-8, pp.57-63.)

---

[3] Strickland v. Washington, 466 U.S. 668 (1984).

*BRIEF IN SUPPORT OF RESPONDENT'S MOTION FOR SUMMARY DISMISSAL - 5*

Huber appealed. (State's lodging C-7, p.1.) However, the state district court concluded that Huber was not entitled to appointed post-conviction appellate counsel under state law because his appeal was frivolous. (State's lodging C-8, pp.68-72.) Huber also requested the appointment of appellate counsel directly from the Idaho Supreme Court, but these requests were denied as well. (State's lodgings D-6, D-7, D-8.)

Huber proceeded *pro se* in his post-conviction appeal. (State's lodgings E-1, E-2.) In an unpublished opinion, the Idaho Court of Appeals affirmed the state district court's summary dismissal order. (State's lodging E-6.) The Court concluded that each of the claims Huber attempted to raise in his post-conviction appellate briefs were waived based upon several related procedural bars, including that Huber failed to allege state district court error, made only general challenges that were unreviewable, and failed to provide cogent argument or citation to legal authority. (Id.) The Court of Appeals denied Huber's petition for rehearing (State's lodging E-8), and the Idaho Supreme Court denied his petition for review and entered the Remittitur (State's lodgings E-12, E-13).

In September 2020, shortly after the Idaho Court of Appeals entered its opinion in Huber's initial post-conviction appeal (but before the Remittitur issued), Huber filed a *pro se* successive post-conviction petition. (State's lodging F-1, pp.6-15.) The state district court summarily dismissed the petition, concluding that it was barred by I.C. § 19-4908, which prohibits successive post-conviction petitions except in limited circumstances not applicable to Huber's case. (State's lodging F-1, pp.662-677.) The court also emphasized the ample opportunities Huber had in the multi-year initial post-conviction proceeding "to make any legal arguments, and [to] obtain and present any evidence." (State's lodging F-1, p.674.) Huber

initiated an appeal (State's lodging F-1, pp.679-682), but then later, through counsel, voluntarily dismissed the appeal (State's lodgings G-1, G-1).

In January 2023, Huber, through counsel, filed a habeas petition in federal district court, commencing this proceeding. (Dkt. 1.) He raised the following claims:

(1) Huber's trial counsel was ineffective for:

(a) failing to adequately investigate and challenge the scientific evidence presented by the state at trial, in that trial counsel (i) failed to investigate and present expert testimony regarding the state's DNA evidence; (ii) failed to object, on confrontation clause grounds, to the admission of a report containing a non-testifying laboratory analyst's conclusions; and (iii) failed to present evidence of Huber's vasectomy, which according to Huber, precluded him from being the source of spermatozoa recovered from the victim's body;

(b) failing to impeach state witness Officer Gary Yergler's testimony about admissions Huber made to him;

(c) failing to impeach the victim's identifications of Huber;

(d) failing to impeach state witness Gayanne Windedahl about her purported motives to testify falsely in favor of the state;

(2) The prosecutor committed a *Napue*[4] violation for failing to correct Officer Yergler's purportedly false testimony about Huber's admissions;

(3) The state committed a *Brady*[5] violation by failing to disclose "raw data" generated during ISP forensic testing that would have been beneficial to his defense, including purported evidence of "stutter" in the DNA mixture's male profile;

(4) Actual innocence.

(Dkt. 1, pp.5-25.)

The state asserts that Claim 4 in Huber's habeas petition is non-cognizable in a federal habeas proceeding; and that each of Huber's habeas claims are procedurally defaulted because the Idaho Court of Appeals applied well-established, consistently applied, independent state

---

[4] Napue v. Illinois, 360 U.S. 264 (1959).

[5] Brady v. Maryland, 373 U.S. 83 (1963).

BRIEF IN SUPPORT OF RESPONDENT'S MOTION FOR SUMMARY DISMISSAL - 7

procedural bars to reject his claims; and that Claims 1(A)(ii) and 1(D) are additionally procedurally defaulted because Huber failed to present them in his initial post-conviction appellate brief, and thus failed to fairly present them to the Idaho Supreme Court.

Contemporaneous with its motion for summary dismissal and brief in support, the state lodges relevant state court records.

## ARGUMENT

A.   Standard Of Review

Rule 4 of the Rules Governing Section 2254 Cases provides that an answer shall be filed unless it appears from the face of the petition that relief is unavailable. The rule permits a response other than an answer. White v. Lewis, 874 F.2d 599, 602 (9th Cir. 1989). Motions to dismiss in response to petitions for habeas corpus relief are common and accepted. Id. at 603 (citing Murray v. Carrier, 477 U.S. 478, 483 (1986)). Rule 4 of the Rules Governing Section 2254 Cases "'explicitly allows a district court to dismiss summarily the petition on the merits when no claim for relief is stated.'" O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (quoting Gutierrez v. Griggs, 695 F.2d 1195, 1198 (9th Cir. 1983)).

A court may look beyond the complaint to matters of public record and doing so does not convert a motion for summary dismissal into a motion for summary judgment. Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1281 (9th Cir. 1986).

B.   Claim 4 Is Non-Cognizable In A Federal Habeas Proceeding

In Claim 4, Huber asserts, as a stand-alone federal habeas claim, that he is actually innocent of the offenses he was convicted of. (Dkt. 1, pp.25-26.) This claim must be dismissed because it is non-cognizable in a federal habeas proceeding. Herrera v. Collins, 506 U.S. 390, 404 (1993) ("[The Supreme Court's] body of habeas jurisprudence makes clear that a claim of

*BRIEF IN SUPPORT OF RESPONDENT'S MOTION FOR SUMMARY DISMISSAL - 8*

'actual innocence' is not itself a constitutional claim."); *see also* Stephenson v. Blades, No. 1:13-cv-00285-BLW, 2014 WL 3509448, *7 (D. Idaho July 14, 2014).  Therefore, this claim must be dismissed.

C.       Each Of Huber's Federal Habeas Claims Are Procedurally Defaulted

  1.       Legal Framework For Exhaustion

Federal courts are barred from granting habeas relief unless the petitioner exhausts the remedies available in state court.  28 U.S.C. § 2254(b).  The exhaustion requirement "reflects a policy of federal-state comity," Picard v. Connor, 404 U.S. 270, 275 (1971), which requires a petitioner to "'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  Duncan v. Henry, 513 U.S. 364, 365 (1995) (quoting Picard, 404 U.S. at 275).  Exhaustion requires more than mere notice; rather, it must "be serious and meaningful."  Keeney v. Tamayo-Reyes, 504 U.S. 1, 10 (1992).  The exhaustion requirement is not satisfied unless the claim has been fairly presented to the state's highest court.  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

"Fair presentation" requires a petitioner to describe both the operative facts and legal theories upon which the federal claim is premised.  Gray v. Netherland, 518 U.S. 152, 162-63 (1996); Shumway v. Payne, 223 F.3d 982, 987-88 (9th Cir. 2000).  "Fair presentation" means more than a "mere similarity of claims" between the issues raised before the state's highest court and those raised in the federal petition.  Duncan, 513 U.S. at 366; Shumway, 223 F.3d at 988.  As discussed in Gray, 518 U.S. at 163, "it is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court." Moreover, a petitioner must make more than a cursory reference to the claim before the state court or a "naked reference" to a constitutional provision.  Shumway, 223 F.3d at 987.  Rather,

the federal basis of the claim before the state court must be "explicit by citing federal law or the decisions of federal courts even if the federal basis is 'self evident.'" Lyons v. Crawford, 232 F.3d 666, 668 (9th Cir. 2000), *as amended*, 247 F.3d 904 (9th Cir. 2001). Based upon Duncan, the degree of explicitness is "rigorous." Id. at 669.

    2.    <u>Legal Framework Of State Procedural Bars</u>

A federal habeas petitioner has procedurally defaulted his claim if he could have raised his constitutional claim in state court but failed and is now barred from doing so by a state court rule. Tacho v. Martinez, 862 F.2d 1376, 1378 (9th Cir. 1988) (citing Murray, 477 U.S. at 485, and Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977)). If a petitioner fails to seek direct review from a state's highest court, and the time has passed for such review, a procedural default exists even if review was afforded in the state's lower courts. O'Sullivan, 526 U.S. at 848; Harmon v. Ryan, 959 F.2d 1457, 1461 (9th Cir. 1992).

Additionally, if a state prisoner defaults a claim by violating a state procedural rule that is based upon adequate and independent state grounds, federal habeas relief is denied absent a showing of cause and prejudice or actual innocence. Coleman v. Thompson, 501 U.S. 722, 729-31 (1991)). To establish "adequate and independent grounds," "a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default." Wells v. Maass, 28 F.3d 1005, 1010 (9th Cir. 1994). The primary purpose of the "adequate and independent" doctrine is to apprise a defendant of the statute's existence. Ford v. Georgia, 498 U.S. 411, 423 (1991) (citing NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 457 (1958) (refusing to apply a state procedural rule because the defendant could not be "deemed to have been apprised of its existence")). Because the doctrine is based upon notice, a defendant "cannot shirk his duty under [state] law . . . simply because there is no reported case directly on point."

Bargas v. Burns, 179 F.3d 1207, 1212 (9th Cir. 1999).  The procedural bar is not dependent upon "case law citation that speaks to the very same factual scenario as the one before it prior to invoking the rule of procedural default.  Instead, we follow the Supreme Court's dictate that where a rule is sufficiently clear as to put a petitioner on notice that he must raise all claims or risk default, that petitioner must raise all claims."  Id.

Once the state pleads the existence of a state procedural bar, the petitioner may challenge the adequacy of the state procedure by citing authority demonstrating inconsistent application of the rule.  If the petitioner adequately challenges the procedural bar, the ultimate burden of proving regular and consistent application of the bar rests with the state.  Bennett v. Mueller, 296 F.3d 752, 761-63 (9th Cir. 2002), as amended by 322 F.3d 573 (9th Cir. 2003); contra Stokes v. Anderson, 123 F.3d 858, 860 (5th Cir. 1997) ("petitioner bears the burden of showing that the state did not strictly or regularly follow a procedural bar around the time of his direct appeal").

3.    Each Of Huber's Federal Habeas Claims Are Procedurally Defaulted

In affirming the state district court's summary dismissal of Huber's initial post-conviction petition, the Idaho Court of Appeals did not reach the merits of any of Huber's claims.  (*See* State's lodging E-6.)  It instead concluded that Huber's claims were waived due to various related state procedural bars.  (Id.)  Because each of these bars were well-established, consistently applied, and independent, the application of these bars renders Huber's claims procedurally defaulted.  Further, because, as discussed above, Huber raised only state-law sentencing claims on direct appeal, and voluntarily dismissed his successive post-conviction appeal, Huber failed to fairly present *any* federal constitutional claim to the Idaho Supreme in any of the underlying state court proceedings.  Each of Huber's federal habeas claims must therefore be dismissed.

The Idaho Court of Appeals construed and then separated Huber's initial post-conviction appellate claims into two groups. The first group consisted of ten substantive constitutional claims, including claims asserting ineffective assistance of counsel – many of which correspond with claims raised in Huber's federal habeas petition. (Id., pp.2-4.) The second group consisted of six claims alleging that the state district court committed errors in the post-conviction proceeding, such as not taking judicial notice of certain portions of the underlying criminal case, not accepting all of Huber's pro se filings while he was represented by counsel, and denying him appointed counsel on appeal. (Id., p.3.) Also included in this second group, as recognized by the Court of Appeals, was a general assertion that the state district court erred by summarily dismissing Huber's post-conviction petition. (Id., pp.3-4.) The Court did not address the merits of any of these claims, but deemed each of the claims in both categories to be "waived," and as such, "[would] not be considered." (Id., pp.3-5.)

With respect to the first group of ten substantive constitutional claims, the Idaho Court of Appeals concluded:

> Although Huber dedicates much of his appellant's brief to developing [this first category of claims], the discussion fails to specify the applicable standard of review on appeal, contains no citations to the record of this case, and identifies no specific legal or evidentiary errors by the district court in this case. The manner in which Huber frames the discussion of his first ten issues resembles the presentation of original claims for relief to be adjudicated in the first instance by the trial court. In essence, Huber appears to seek a complete reevaluation of these claims by this court, not review of a specific error by the district court.
>
> Even if we construed Huber's first ten issues as challenges to the summary dismissal of his petition for post-conviction relief, the challenges (which lack specific references to legal or evidentiary errors) would amount to only a general attack on the findings and conclusions supporting the district court's summary dismissal determination. Appellate courts will not consider such general challenges to a trial court's findings and conclusions. *See* [*PHH Mortg. V. Nickerson*, 423 P.3d 454, 459 (Idaho 2018)]. *Consequently, Huber's first ten issues are deemed waived.*

(Id., p.3 (emphasis added, footnote omitted).)

Therefore, while it appears that the Court of Appeals recognized multiple procedural defects in Huber's initial post-conviction appellate briefs (failure to specify the applicable standard of review, lack of citation to the record, failure to identify specific legal or evidentiary errors by the state district court), it ultimately deemed the claims in this group to be waived because even to the extent Huber challenged the district court's summary dismissal of his post-conviction petition, such a challenge amounted to only a "general attack on the findings and conclusions the district court's summary dismissal determination." (Id.) This is a well-established, consistently applied, independent state procedural bar.

In PHH Mortg, 423 P.3d at 459, the case cited by the Idaho Court of Appeals in applying this bar, the Idaho Supreme Court explained, "[i]f an appellant fails to assert his assignment of error with particularity and to support his position with sufficient authority, those assignments of error are too indefinite to be heard by this Court," that it would not "consider general attacks on the district court's conclusions absent specific reference to evidentiary or legal errors," and that "[a]rguments of this type are deemed to have been waived." (citing Bettwieser v. N.Y. Irrigation Dist., 297 P.3d 1134, 1139 (Idaho 2013); Bach v. Bagley, 229 P.3d 1146, 1152 (Idaho 2010)). For decades, Idaho appellate cases have applied this procedural bar and deemed claims raised by parties in violation of the bar to be waived. See Bergeman v. Select Portfolio Servicing, 432 P.3d 47, 50 (Idaho 2018); Liponis v. Bach, 234 P.3d 696, 698-699 (Idaho 2010); Dawson v. Cheyovich Fam. Tr., 234 P.3d 699, 707 (Idaho 2010); Suits v. Idaho Bd. of Pro. Discipline, 64 P.3d 323, 326 (Idaho 2003); Farnworth v. Ratliff, 999 P.2d 892, 895 (Idaho 2000); Michael v. Zehm, 263 P.2d 990, 992-993 (Idaho 1953).

With respect to the second group of six claims in Huber's post-conviction appellate brief,

*BRIEF IN SUPPORT OF RESPONDENT'S MOTION FOR SUMMARY DISMISSAL - 13*

in which he alleged state district court error in the post-conviction proceeding, the Idaho Court of Appeals concluded, in relevant part:

> Additionally, Huber generally asserts that the district court erred in summarily dismissing his petition for post-conviction relief because he "presented substantial evidence of several valid claims." Huber's appellant's brief, however, contains neither cogent argument nor citation to legal authority in support of the five issues alleging an abuse of discretion. A party waives an issue on appeal if either argument or authority is lacking. *Powell v. Sellers*, [937 P.2d 434, 440 (Idaho App. 1997]). Accordingly, those five issues are waived.
>
> The issue of whether Huber presented "substantial evidence of several claims" is also not expressly developed in the body of Huber's brief. Even if we construe Huber's arguments related to his ineffective assistance, prosecutorial misconduct, due process, and speedy trial claims as supporting his contention that his petition asserted viable post-conviction claims, Huber's argument that the district court erred by summarily dismissing his petition would still fail. As discussed above, Huber's arguments related to his claims of ineffective assistance, prosecutorial misconduct, due process, and speedy trial violations are insufficient to preserve those issue for review. Consequently, those arguments are also insufficient to support Huber's contention that the district court erred in summarily dismissing his petition. *Accordingly, that issue is also deemed waived for lack of cogent argument and citation to legal authority.*

(State's lodging E-6, pp.3-4 (emphasis added, footnote omitted).)

Of this second group of claims, only one, Huber's claim that the district court erred by summarily dismissing his post-conviction petition, has any possible relation to his federal habeas claims (the others, as described above, pertain to alleged state district court errors, rooted in state law, regarding the procedures employed in the state post-conviction proceeding). This claim, the Court of Appeals concluded, was waived because Huber failed to support it with "cogent argument and citation to legal authority." (State's lodging E-6, p.4.) This bar, which is similar to the bar utilized by the Court of Appeals to reject Huber's first 10 post-conviction claims, is likewise well-established, consistently applied, and independent. *See* Powell, 937 P.2d at 440; State v. Zichko, 923 P.2d 966, 970 (1996); Zichko v. Idaho, 247 F.3d 1015, 1021 (9th Cir. 2001) (holding that the Idaho *Zichko* principle is an adequate and independent state procedural ground).

BRIEF IN SUPPORT OF RESPONDENT'S MOTION FOR SUMMARY DISMISSAL - 14

Because the Idaho Court of Appeals did not consider the merits of any of the claims Huber attempted to raise in his post-conviction appellate briefs, and instead imposed adequate and independent procedural bars to reject each of these claims (claims which it then deemed to be "waived,") each of these claims is procedurally defaulted. Because Huber also failed to present any federal constitutional claims in his direct appeal, and voluntarily dismissed his successive post-conviction appeal, Huber did not fairly present *any* federal constitutional claims to the Idaho Supreme Court. Therefore, each of Huber's claims in his federal habeas petition are procedurally defaulted and much be dismissed unless Huber can demonstrate cause and prejudice or actual innocence.

4. <u>Two Of Huber's Habeas Claims Were Not Raised In His Appellant's Brief</u>

While the state asserts that each of Huber's federal habeas claims are procedurally defaulted and must be dismissed for the reasons set forth above, Claims 1(A)(ii) and 1(D) are additionally procedurally defaulted because Huber failed to present them in his post-conviction appellate briefs, and therefore failed to fairly present them to the Idaho Supreme Court.

In Claim 1(A)(ii), Huber asserts his trial counsel was ineffective for failing to object, on confrontation clause grounds, to the admission of a report containing a non-testifying laboratory analyst's conclusions. (Dkt. 1, pp.12-13.) While this matter appears to have been a concern of Dr. Hampikian as expressed in an email communication between Dr. Hampikian and Huber's post-conviction counsel (State's lodging C-4, p.95), the state has not located this claim, or any reference to the confrontation clause, in Huber's post-conviction appellant's brief or supplemental brief. (*See* State's lodgings E-1, E-2.)

In Claim 1(D), Huber asserts his trial counsel was ineffective for failing to impeach state witness Gayanne Windedahl's testimony about her purported motives to testify falsely in favor of

the state. (Dkt. 1, pp.21-22.) Specifically, Huber asserts that Windedahl was biased in favor of the state because she was on probation, had gone to the victim's home during the relevant timeframe to obtain drugs from the victim's father, and was informed by the investigating officer that she would benefit from cooperating with his investigation. (Id.) While Windedahl was mentioned briefly in Huber's post-conviction appellate brief (State's lodging E-1, p.38), the state has not located any assertion that trial counsel was ineffective for failing to adequately cross-examine her about alleged biases. (*See* State's lodgings E-1, E-1).

Even if Huber's federal habeas claims are not procedurally defaulted for the reasons set forth above pertaining to the procedural bars applied by the Idaho Court of Appeals, Claims 1(A)(ii) and 1(D) are still procedurally defaulted because Huber failed to raise them in his post-conviction appellate brief, and thus failed to fairly present them to the Idaho Supreme Court; and because the time to do so has now expired (*see* I.A.R. 14).

      6.      <u>To Overcome Dismissal Due To Procedural Default, Huber Must Show Cause And Prejudice Or A Miscarriage Of Justice</u>

When a procedural default bars litigation of a constitutional claim in state court, a state prisoner may not obtain federal habeas relief unless the prisoner shows: (1) a valid cause for the default and actual prejudice resulting from the alleged constitutional violation, or (2) that failure to consider the claims will result in a miscarriage of justice, also known as "actual innocence." <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991); <u>Murray</u>, 477 U.S. at 496; <u>Reed v. Ross</u>, 468 U.S. 1, 16-19 (1984).

      a.      <u>General Legal Standards Governing Cause And Prejudice</u>

When a procedural default bars litigation of a constitutional claim in state court, a state prisoner may not obtain federal habeas relief absent a showing of cause and prejudice. <u>Reed v. Ross</u>, 468 U.S. 1, 16-19 (1984). In <u>Coleman</u>, 501 U.S. at 753 (quoting <u>Murray</u>, 477 U.S. at 488),

the Court discussed "cause" as being something external to the petitioner, "[W]e think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."

A petitioner must also establish "prejudice" from the inability to raise the defaulted issue. Murray, 477 U.S. at 494. A petitioner must show more than the possibility of prejudice, but, rather, must establish that those errors worked to his substantial disadvantage, infecting the entire trial. U.S. v. Frady, 456 U.S. 152, 170 (1982). In Vansickel v. White, 166 F.3d 953, 958 (9th Cir. 1999), the court implied that the prejudice prong of Strickland v. Washington, 466 U.S. 668 (1984), applies to the "prejudice" standard of procedural defaults. This requires Huber to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Vansickel, 166 F.3d at 958-59 (quoting Strickland, 466 U.S. at 694).

Consequently, if in his response to the state's Motion for Summary Dismissal Huber fails to establish cause and prejudice excusing his procedural defaults, his habeas petition must be summarily dismissed unless he can demonstrate actual innocence.

      b.     General Legal Standards Governing Miscarriage Of Justice

Application of the fundamental miscarriage of justice exception "makes clear that a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass in order to have his otherwise barred constitutional claim considered on the merits." Herrera, 506 U.S. at 404. To establish a miscarriage of justice by virtue of actual innocence, a petitioner must demonstrate that, "in light of all the evidence," "it is more likely

*BRIEF IN SUPPORT OF RESPONDENT'S MOTION FOR SUMMARY DISMISSAL - 17*

than not that no reasonable juror would have convicted him." Schlup v. Delo, 513 U.S. 298, 327 and 328 (1995). "Actual innocence" means factual innocence, not mere legal insufficiency. Sawyer v. Whitely, 505 U.S. 333, 339 (1992).

In Schlup, 513 U.S. at 324, the United States Supreme Court explained, "[t]o be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." The overall formulation of the Schlup actual innocence standard "ensures that petitioner's case is truly extraordinary, while still providing petitioner a meaningful avenue by which to avoid a manifest injustice." House, 547 U.S. at 536-537 (citations and internal quotations omitted.) Cases where the Schlup standard has been satisfied have "typically involved dramatic new evidence of innocence." Larsen, 742 F.3d at 1096. Ultimately, successful gateway claims of actual innocence are "extremely rare." Schlup, 513 U.S. at 321.

As discussed above, Huber raised actual innocence as a stand-alone claim in his federal habeas petition. (Dkt. 1, pp.25-26.) Additionally, and separately, he asserts that "he will be able to establish an exception" to excuse the procedural default of any of his claims. (Dkt. 1, p.26.) The state presumes that Huber will attempt to demonstrate he is entitled to application of the actual innocence procedural default exception, *see* Herrera, 506 U.S. at 404; Schlup, 513 U.S. 298. The state reserves all responses it might assert should Huber do so. However, if, in his response to the Respondent's Motion for Summary Dismissal, Huber fails to establish a fundamental miscarriage of justice, his procedurally defaulted claims must be dismissed.

**CONCLUSION**

The state respectfully requests this Court grant the state's motion for summary dismissal and to dismiss, with prejudice, each claim in Huber's Petition for Writ of Habeas Corpus.

DATED this 24th day of August, 2023

/s/
MARK W. OLSON
Deputy Attorney General
Capital Litigation Unit

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on or about the 24th day of August, 2023, I caused to be serviced a true and correct copy of the foregoing document by the method indicated below, postage prepaid where applicable, and addressed to the following:

| | |
|---|---|
| Craig H. Durham | ____ U.S. Mail |
| Ferguson Durham, PLLC | ____ Hand Delivery |
| 223 N. 6th Street, Suite 325 | ____ Overnight Mail |
| Boise, ID  83702 | ____ Facsimile |
| chd@fergusondurham.com | |
| | _X_ Electronic Court Filing |

/s/ *Mark W. Olson*
MARK W. OLSON
Deputy Attorney General
Capital Litigation Unit

*BRIEF IN SUPPORT OF RESPONDENT'S MOTION FOR SUMMARY DISMISSAL - 19*