UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| MARK DOUGLAS HUBER,<br><br>                    Petitioner,<br><br>    v.<br><br>RANDY VALLEY,<br><br>                    Respondent. | Case No. 1:23-cv-00039-DKG<br><br>**MEMORANDUM DECISION AND ORDER** |

Idaho state prisoner Mark Douglas Huber ("Petitioner" or "Huber"), through counsel, filed the instant Petition for Writ of Habeas Corpus. *See* Dkt. 1. Respondent has filed a Motion for Summary Dismissal, arguing that all of Petitioner's claims are procedurally defaulted without excuse and that Claim IV is noncognizable. *See* Dkt. 10. The Motion is now ripe for adjudication.

The Court takes judicial notice of the records from Petitioner's state court proceedings, which have been lodged by the parties. Dkt. 9, 16, 21; *see* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006).

The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. 5. Having carefully reviewed the record, including the state court record, the Court finds that oral argument is unnecessary. *See* D. Idaho L.

Civ. R. 7.1(d). Accordingly, the Court will enter the following Order granting

Respondent's Motion and dismissing this case with prejudice.

## BACKGROUND

Following a jury trial in the First Judicial District Court in Shoshone County,

Idaho, Petitioner was convicted of one count of rape and one count of lewd conduct with

a minor under the age of sixteen. He was sentenced, as a repeat sex offender, to

concurrent unified terms of thirty years with fifteen years fixed.[1] *State v. Huber*, No.

39222, 2015 WL 1903624, at *1 (Idaho Ct. App. Apr. 27, 2015) (unpublished).

## 1.     Evidence Adduced at Trial

Petitioner's convictions stemmed from an incident involving D.V., a 14-year-old

girl. D.V. testified that her father arranged for Petitioner to meet, and then have sex with,

D.V. *State's Lodging A-8* at 201–09.

When D.V. was in the bedroom at her father's house, her father brought Petitioner

into the bedroom and introduced them so they could play strip poker. Once Petitioner was

alone with D.V., he started asking her sexual questions. Petitioner pulled D.V. to him and

started to initiate physical contact. D.V. resisted and told Petitioner she did not want to

have sex with him. Petitioner then vaginally raped D.V. and forced her to perform, and to

receive, oral sex. *Id*. at 214–28.

---

[1] Huber was initially sentenced to ten years fixed. However, the trial court later amended the sentence to comply with Idaho's statutory minimum sentence for repeat sex offenders. *Huber*, 2015 WL 1903624, at *1.

D.V. had tried to fight Petitioner off and called to her father for help, to no avail. *Id.* at 222–24. In fact, her father came into the room during the attack and told Petitioner, "Just continue." *Id*. at 228–29.

D.V. later identified Petitioner's distinctive tattoo. D.V. also identified Petitioner in court as her rapist.[2] *Id*. at 210–12.

Gayanne Windedahl, who arrived at Petitioner's father's house the night of the incident, testified that Petitioner's father told her not to go into the bedroom to use the adjoining bathroom because "the bedroom was being occupied by his daughter and her boyfriend." *Id*. at 320. Later, Windedahl saw Petitioner come out of the bedroom and leave the house. *Id*. at 322. Windedahl then went to check on D.V., who was flushed and tearful and had "marks all over her neck." *Id*. D.V. told Windedahl that Petitioner had forced himself on her.[3]

D.V.'s testimony was also corroborated by photographs of her injuries and by the emergency room doctor who examined her. The doctor testified that D.V. told him the following, which was similar to how D.V. testified at trial:

> Events as given by patient, and this is basically events as she said that they occurred. Father called her and asked her to come to his house. He then drove with another man to her

---

[2] Petitioner asserts that when D.V. made the in-court identification, she actually described what Petitioner's *attorney* was wearing, not what Petitioner himself was wearing. This claim is based on Petitioner's unsworn (and, thus, inadmissible) statement presented to the state court in a motion for reconsideration. *State's Lodging F-1* at 142. Of course, if D.V. really had identified Petitioner's attorney as her rapist, one would think that the prosecutor, defense counsel, or the judge would have said something at the time. They did not.

[3] Defense counsel had evidence that Windedahl was on probation and that Officer Yergler told Windedahl that he might be able to help her with her probation, suggesting she could benefit from telling Yergler what he wanted to hear. Counsel did not attempt to impeach Windedahl on this basis.

house to pick her up. The driver then left. The suspect, in
parentheses Mark, then came over several hours later. Father
wanted to play strip poker; so he went to get cards. Patient
and suspect were introduced to each other. The suspect then
began to ask sexual questions. Father came back and again
left to get, she said, alcohol and drugs. The suspect then
began to lift the patient's shirt, kiss her neck, et cetera, and
then forced himself upon her. The father came home while
the suspect was having intercourse with vaginal penetration.
He did nothing to stop the act.

…

As part of our questioning, we asked both is there an
attempted penetration as well as a successful penetration. She
stated there was both attempted and successful penetration of
the vagina and attempted and successful penetration of the
mouth.

*Id*. at 86–87.

In addition, the prosecution presented DNA evidence, but it was inconclusive.

Only a single spermatozoon was recovered from D.V.[4] *Id.* at 310. The State's expert

testified that, although the small amount of male DNA recovered from D.V. was

"consistent" with Petitioner's DNA, "there wasn't enough for me to draw any

conclusions as to whether or not it actually is Mr. Huber's DNA." *Id.* at 302. Petitioner

could not be excluded as the contributor, but neither could he be confirmed as the

---

[4] One of Petitioner's arguments in post-conviction proceedings relied on a DNA expert who opined that the single spermatozoon could have been a result of contamination due to certain lab practices. *State's Lodging C-6* at 171–81. The expert's opinion ultimately was held to be inadmissible because it was not verified as required by the Idaho Rules of Civil Procedure. *State's Lodging C-5* at 91. The sworn affidavit of Petitioner's expert was not submitted until after the state court dismissed the post-conviction petition. *State's Lodging C-6* at 171–202.

contributor. On cross-examination by defense counsel, the expert reiterated that she could not say it was Petitioner's DNA. *Id*. at 307.

On redirect, the prosecutor asked about the "mixture of DNA on the swab," that is, the mixture of D.V.'s DNA and the foreign, male DNA recovered from the rape kit. *Id*. at 308. The prosecutor asked, "[W]hat's the presence of that mixture in the human population?" *Id*. The expert responded, "I did calculate a statistic as to how common that mixture would be in the population, and my statistic was one in every 230 billion unrelated individuals would be expected to contribute to that mixture."[5] *Id*.

The State also presented testimony of the investigating police officer, Gary Yergler. Yergler testified that, when he drove Petitioner to the police station after his arrest, Petitioner initiated a conversation in which he made incriminating statements. According to Yergler:

> [T]he first thing I believe Mr. Huber said to me was, I believe, "I thought that girl was old enough." Next he said, "I didn't know that girl was underage." And that was pretty much the extent of what he said to me about [D.V.].

---

[5] As Petitioner points out, it appears this statistic was meant to convey that the "probability of any random two unrelated people contributing to this particular DNA mixture was 1 in 230 billion," Dkt. 14 at 15, rather than showing any probability of it actually being *Petitioner's* DNA. As the same expert concluded, the amount of male DNA was too small for her to identify it as Petitioner's. The statistic was not further explained at trial, however, so it is unclear whether the jury interpreted this statistic the way it was intended. Evidence introduced in later state court proceedings, but held by the court to be inadmissible, tended to show that the likelihood of any two random individuals contributing to the mixture could actually have been as high as 1 in 150,000, rather than 1 in 230 billion. *State's Lodging C-6* at 175.

*State's Lodging A-8* at 139. The prosecutor then asked Yergler, "But did he deny—did he later indicate whether he had sexual contact with her or not?" Yergler replied, "I never asked that question." *Id.*

On cross-examination, defense counsel elicited testimony that Yergler did not include these alleged admissions by Petitioner in Yergler's police report:

> Q. But you're indicating today that he actually made statements to you; correct?
>
> A. Yes, sir.
>
> Q. But you're saying that your police report is devoid of those statements?
>
> A. Yes, sir.
>
> Q. Did you bring a copy of that report with you today?
>
> A. Yes. I have a copy of my narrative.
>
> …
>
> Q. So is that the only report you wrote on this incident, Officer?
>
> A. Yes, it is.
>
> …
>
> Q. … Nowhere in that report do you even mention any contact that you had with Mr. Huber, do you?
>
> A. No, sir, I don't.
>
> Q. So after this particular report, you had the opportunity to talk to Mr. Huber then; correct?
>
> A. I didn't talk to him. He spoke to me. I didn't initiate any conversation with him.

Q. So while you were working on this case and doing follow-up with Mr. Huber, you failed to write a report about what happened during that time; correct?

A. Which time do you refer to, sir?

Q. The time when you said that Mr. Huber made these alleged spontaneous comments to you.

A. Sure. I didn't write that in the report, into a supplemental.

*Id*. at 141–42.

Yergler also testified that he recorded part of the alleged conversation with his pocket recorder: "I believe I shut [the recorder] off en route to the jail. He quieted down, and I just shut my recorder off." *Id*. at 142. The actual recording of the Yergler-Huber discussion was not introduced at trial.[6]

The jury found Petitioner guilty of rape and lewd conduct with a minor. Petitioner's convictions were affirmed on appeal. *Huber*, 2015 WL 1903624; *see also State's Lodging B-10* (Idaho Supreme Court's denial of petition for review).

## 2.    State Court Post-Conviction Proceedings

While his direct appeal was pending, Petitioner also pursued state post-conviction relief. The state district court dismissed Petitioner's initial state post-conviction petition. *State's Lodging C-5* at 713–41. Petitioner's request for the appointment of counsel on

---

[6] Evidence presented to the state court in a motion for a new trial would later call Yergler's testimony into question. The audio recording contains no admissions by Petitioner. However, the recording seems to begin in the middle of a conversation, so it is conclusive as to whether Petitioner previously made such admissions to Yergler. Perhaps more importantly, contrary to the implication in Yergler's testimony, the recording also contains several denials of guilt by Petitioner, including assertions that Petitioner had been "set up." *See* Dkt. 16, Att. A-D. Finally, it does not appear that Yergler shut off the recording en route to the jail as he had testified, given that Petitioner's arrival at the jail can actually be heard toward the end of the recording.

appeal was denied. *State's Lodging C-8* at 1249–52; *D-8*; *D-9*. The Idaho Court of Appeals affirmed the dismissal of Petitioner's initial post-conviction petition, and the Idaho Supreme Court denied review. *State's Lodging E-6*; *E-12*.

Petitioner also filed a successive state post-conviction petition, which was dismissed by the state district court. Petitioner appealed but later, through counsel, voluntarily dismissed that appeal. *State's Lodging F-1* at 679–81; *G-1*; *G-2*.

**3.    Petitioner's Federal Habeas Claims**

In the instant federal habeas corpus petition, Petitioner asserts the following claims:

Claim I(A):    Ineffective assistance of trial counsel for failing to investigate and challenge scientific evidence with respect to (i) expert DNA evidence; (ii) the admission of a non-testifying lab analyst's opinions, which Petitioner asserts violated the Confrontation Clause; (iii) and Huber's vasectomy.

Claim I(B):    Ineffective assistance of trial counsel for failing to impeach Officer Yergler's testimony regarding alleged admissions made by Petitioner.

Claim I(C):    Ineffective assistance of trial counsel for failing to impeach the victim's identification of Petitioner.

Claim I(D):    Ineffective assistance of trial counsel for failing to present evidence that witness Windedahl had a motive to testify falsely against Petitioner.

Claim II:    Violation of due process based on the State's failure to correct Officer Yergler's allegedly false testimony.

Claim III:           Violation of due process based on the State's failure to disclose the raw data generated during forensic testing.

Claim IV:           Actual innocence.

*See Pet.*, Dkt. 1.

Respondent now argues that Claim IV is not cognizable and that Petitioner's claims are procedurally defaulted without excuse. For the reasons that follow, the Court agrees.

## DISCUSSION

The Rules Governing Section 2254 Cases ("Habeas Rules") authorize the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any attached exhibits," as well as those records subject to judicial notice, "that the petitioner is not entitled to relief in the district court." Habeas Rule 4; *see* Fed. R. Evid. 201(b); *Dawson*, 451 F.3d at 551 n.1. Where appropriate, a respondent may file a motion for summary dismissal, rather than an answer. *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989).

## 1.    Claim IV Is Not Cognizable

In Claim IV, Petitioner asserts that he is actually innocent of the crimes for which he was convicted. *Pet.* at 25–26.

"Actual innocence" generally is not asserted as an independent constitutional claim, but rather as a "gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993). Neither the United States Supreme Court nor the Ninth Circuit has

conclusively determined whether a freestanding actual innocence claim is cognizable in a federal habeas corpus proceeding. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."); *Herrera*, 506 U.S. at 417 ("We may assume, for the sake of argument in deciding this case, that in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim."); *Jones v. Taylor*, 763 F.3d 1242, 1246 (9th Cir. 2014) ("We have not resolved whether a freestanding actual innocence claim is cognizable in a federal habeas corpus proceeding in the non-capital context, although we have assumed that such a claim is viable.").

On the other hand, this Court has previously held that "a freestanding claim of actual innocence is not cognizable on collateral review in a non-capital federal habeas corpus action." *Stephenson v. Blades*, 2014 WL 3509448, at *7 (D. Idaho July 14, 2014); *see Herrera*, 506 U.S. at 400 ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding …. This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact."). After careful consideration, this Court again holds that actual innocence is not cognizable as a freestanding constitutional claim, at least in noncapital cases. Accordingly, Claim IV must be dismissed as noncognizable.

2.       **Petitioner's Claims Are Procedurally Defaulted Without Excuse**

For the following reasons, all of Petitioner's claims must be dismissed as procedurally defaulted without legal excuse.

A.       *Procedural Default Standards of Law*

A habeas petitioner must exhaust his or her remedies in the state courts before a federal court can grant relief on a constitutional claim. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To do so, the petitioner must invoke one complete round of the state's established appellate review process, fairly presenting all federal constitutional claims to the state courts so that they have a full and fair opportunity to correct alleged constitutional errors at each level of appellate review. *Id.* at 845. In a state that has the possibility of discretionary review in the highest appellate court, like Idaho, the petitioner must have presented all of his federal claims at least in a petition seeking review before that court. *Id.* at 847. "Fair presentation" requires a petitioner to describe both the operative facts and the legal theories upon which the federal claim is based. *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996).

Raising a claim "for the first and only time in a procedural context in which its merits will not be considered" except in rare circumstances does not constitute fair presentation. *Castille v. Peoples*, 489 U.S. 346, 351 (1989). In addition, presenting a state law claim does not properly exhaust a federal claim, even if the state and federal claims are similar. *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) (per curiam).

General references in state court to "broad constitutional principles, such as due process, equal protection, [or] the right to a fair trial," are likewise insufficient. *See*

MEMORANDUM DECISION AND ORDER - 11

*Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999). For proper exhaustion, a petitioner must bring his federal claim before the state court by "explicitly" citing the federal legal basis for his claim. *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *as amended*, 247 F.3d 904 (9th Cir. 2001).

When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and the state court would now refuse to consider it because of the state's procedural rules, the claim is said to be procedurally defaulted. *Gray*, 518 U.S. at 161–62. Procedurally defaulted claims include claims that, although they were presented to the state court, were held by that court to be procedurally barred, so long as the procedural rule relied upon by the state court is adequate to support the state court's judgment and independent of federal law. *Bennett v. Mueller*, 322 F.3d 573, 580 (9th Cir. 2003).

To qualify as an "adequate" procedural basis, the state rule at issue must be "clear, consistently applied, and well-established at the time of the petitioner's purported default." *Martinez v. Klauser*, 266 F.3d 1091, 1093 (9th Cir. 2001) (internal quotation marks omitted). A state procedural bar is "independent" of federal law if it does not rest on, and if it is not interwoven with, federal grounds. *Bennett*, 322 F.3d at 581.

If the state court applied an adequate and independent procedural bar, then the claim is procedurally defaulted, even if a petitioner asserts that the application of the procedural bar was erroneous under state law. Federal courts lack the authority to second-guess a state court's application of its own procedural bar in a particular case. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("Today, we reemphasize that it is not the

province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir. 1999) ("Federal habeas courts lack jurisdiction … to review state court applications of state procedural rules."); *Johnson v. Foster*, 786 F.3d 501, 508 (7th Cir. 2015) ("[A] federal habeas court is not the proper body to adjudicate whether a state court correctly interpreted its own procedural rules, even if they are the basis for a procedural default."). Thus, in the vast majority of cases, even an incorrect application of a generally adequate state procedural bar does not permit a federal court to reach the procedurally defaulted claim.

A rare exception exists when a state court's interpretation of state law "appears to be an obvious subterfuge to evade consideration of a federal issue," *Mullaney v. Wilbur*, 421 U.S. 684, 691 n.1 (1975) (internal quotation marks omitted), when a state court applied a procedural rule "in an erroneous and arbitrary manner," *Sivak v. Hardison*, 658 F.3d 898, 907 (9th Cir. 2011), or when, in the "exceptional" case, "exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question," *Lee v. Kemna*, 534 U.S. 362, 376 (2002). A federal court may re-examine a state court's application of a state procedural bar only in these extraordinary circumstances.

Once the state sufficiently pleads the existence of an adequate and independent state procedural bar, the burden shifts to the petitioner to establish that the rule is not adequate or is dependent on federal law. "The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the

rule." *Bennett*, 322 F.3d at 586. The ultimate burden to show that the procedural rule is adequate and independent, however, remains with the state.

### B.      All Claims in the Petition Are Procedurally Defaulted

#### i.      Claims I(A)(ii) and I(D) Are Defaulted Because They Were Not Presented to the Idaho Court of Appeals

On direct appeal, Petitioner argued only that the district court abused its discretion, under Idaho law, when it sentenced Petitioner and when it denied Petitioner's Rule 35 motion. Because Petitioner did not raise a federal claim in his direct appeal, that proceeding could not serve to fairly present any of Petitioner's instant habeas claims.

On appeal from the dismissal of Petitioner's initial state post-conviction petition, Petitioner raised all of his current federal claims except Claims I(A)(ii) and I(D). *State's Lodging E-1; E-2*. Those claims assert that trial counsel was ineffective for, respectively, failing to raise a Confrontation Clause objection to a lab report and failing to impeach witness Gayanne Windedahl regarding her alleged motive to testify falsely. Accordingly, these two claims are procedurally defaulted because they were not raised to the highest state court.

#### ii.      Petitioner's Remaining Claims Are Defaulted Based on an Adequate and Independent State Procedural Bar

Petitioner's remaining habeas claims were raised in his opening brief in his post-conviction appeal. *State's Lodging E-1; E-2*. However, the Idaho Court of Appeals refused to address the claims on the merits, concluding that the claims were not raised *properly* under Idaho state law.

MEMORANDUM DECISION AND ORDER - 14

The state court correctly noted that Petitioner had identified sixteen issues on appeal. Ten of these issues, however, did "not address a decision by the district court in Huber's post-conviction proceeding." *State's Lodging E-6* at 2. The state appellate court found that Petitioner's briefing attacked error in the underlying criminal case but did *not* identify a specific error on the part of the lower post-conviction court:

> Although Huber dedicates much of his appellant's brief to developing these issues, the discussion *fails to specify the applicable standard of review on appeal, contains no citations to the record of this case, and identifies no specific legal or evidentiary errors by the district court in this case*. The manner in which Huber frames the discussion of his first ten issues resembles the presentation of original claims for relief to be adjudicated in the first instance by the trial court. In essence, Huber appears to seek a complete reevaluation of these claims by this Court, not review of a specific error by the district court.

*Id.* at 3 (emphasis added) (footnote omitted). Relying on the Idaho courts' procedural rule requiring specificity in identifying a lower court's error, the state court of appeals deemed Petitioner to have waived his first ten issues—which alleged factual innocence, various instances of ineffective assistance of counsel, prosecutorial misconduct, and due process and speedy trial violations. *Id.*

Of the remaining six issues raised by Petitioner in his initial post-conviction appeal, five of them asserted specific errors of the lower post-conviction court—that the court abused its discretion "by not taking judicial notice of certain portions of the underlying criminal case, not accepting all of Huber's pro se filings when he was represented by counsel, denying him appointed counsel on appeal, issuing a 'final ruling

without giving him the chance to refute the State's bogus case law,' and denying him a new trial." *Id.*

As to these five abuse-of-discretion claims, the Idaho Court of Appeals concluded that Petitioner's briefing contained "neither cogent argument nor citation to legal authority in support" of the claims. *Id.* at 4. Noting that a "party waives an issue on appeal if either argument or authority is lacking," the state court of appeals concluded that Petitioner had also waived these claims. *Id.* (citing *Powell v. Sellers*, 937 P.2d 434, 440 (Idaho Ct. App. 1997)).

The final claim Petitioner raised in the initial post-conviction appeal was that substantial evidence supported several claims—once again a general, not a specific, identification of error. The Idaho Court of Appeals again invoked the rule requiring that an appellant support his claims with both argument and authority:

> *The issue of whether Huber presented "substantial evidence of several valid claims" is also not expressly developed in the body of Huber's brief.* Even if we construe Huber's arguments related to his ineffective assistance, prosecutorial misconduct, due process, and speedy trial claims as supporting his contention that his petition asserted viable post-conviction claims, Huber's argument that the district court erred by summarily dismissing his petition would still fail. As discussed above, Huber's arguments related to his claims of ineffective assistance, prosecutorial misconduct, due process, and speedy trial violations are *insufficient to preserve those issues for review*. Consequently, those arguments are also insufficient to support Huber's contention that the district court erred in summarily dismissing his petition. Accordingly, *that issue is also deemed waived for lack of cogent argument and citation to legal authority*.

*Id.* (emphasis added).

MEMORANDUM DECISION AND ORDER - 16

The two rules relied upon by the Idaho Court of Appeals—the specificity requirement and the argument-and-authority requirement—are closely related. The Ninth Circuit held long ago that the argument-and-authority requirement of the Idaho state courts is adequate and independent. *See Zichko v. Idaho*, 247 F.3d 1015, 1021 (9th Cir. 2001). Thus, the claims held by the Idaho Court of Appeals to be barred by the argument-and-authority requirement are procedurally defaulted.

The next question is whether the waiver rule based on failing to identify a specific error of the lower court is also adequate and independent. In applying the specificity requirement, the Idaho Court of Appeals cited *PHH Mortgage v. Nickerson*, 423 P.3d 454 (Idaho 2018).

In that case, the Idaho Supreme Court explained its jurisprudence regarding the specificity requirement, which has its genesis in the Idaho Appellate Rules:

> The Idaho Appellate Rules require that parties' arguments "shall contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to authorities, statutes and parties of the transcript and record relied upon." I.A.R. 35(a)(6). If an appellant fails to "assert his assignments of error with particularity and to support his position with sufficient authority, those assignments of error are too indefinite to be heard by this Court." *Bettwieser v. N.Y. Irrigation Dist.*, 154 Idaho 317, 322, 297 P.3d 1134, 1139 (2013) (quoting *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010)).

*Id*. at 459. *PHH Mortgage* held that Idaho courts "will not consider general attacks on the district court's conclusions absent 'specific reference to evidentiary or legal errors,' and that "[a]rguments of this type are deemed to have been waived." *Id*.

MEMORANDUM DECISION AND ORDER - 17

The *PHH Mortgage* court went on to explain that, under Idaho law, individuals who are not represented by counsel "are not entitled to special consideration or leniency because they represent themselves." *Id*. Instead, "pro se litigants must conform to the same standards and rules as litigants represented by attorneys." *Id*. (internal quotation marks and alteration omitted).

*PHH Mortgage* was decided in 2018, before the Idaho Court of Appeals applied the specificity requirement to Petitioner's issues on appeal from the dismissal of his initial post-conviction petition, and the Court has not found any authority demonstrating inconsistent application of the rule. Thus, in an ordinary case, the specificity requirement is an adequate and independent state procedural rule.

Petitioner has not pointed to any reason why this Court should not recognize the general adequacy of Idaho's specificity requirement. Instead, Petitioner contends that, in his case in particular, "a lenient construction of Huber's filings in the state court for exhaustion purposes combined with the state court's exorbitant, arbitrary, and erroneous application of its waiver rule render that rule inadequate to prevent federal review." Dkt. 14 at 8. That is, Petitioner asserts that this case represents one of the exceptional situations in which a federal habeas court is permitted to re-examine the state appellate court's application of the waiver bars at issue.

Petitioner argues that the Court should construe his briefing in state court as complying with Idaho's specificity and argument-and-authority requirements—he thus asks this Court to overrule the state court's application of its procedural rules. Petitioner cites two cases in which the Ninth Circuit stated that, for purposes of exhaustion, pro se

briefing in state court should be held to a more lenient standard than if the briefing had been written by an attorney. *See Peterson v. Lampert*, 319 F.3d 1153, 1159 (9th Cir. 2003); *Sanders v. Ryder*, 342 F.3d 991, 999 (9th Cir. 2003); *see also* Dkt. 14 at 7.

The Honorable Candy W. Dale, United States Magistrate Judge for the District of Idaho, recently addressed a similar argument. In *Taylor v. Blades*, the state court had applied the argument-and-authority bar in refusing to address the petitioner's claim on the merits. *See* Case No. 1:15-cv-00552-CWD, 2024 WL 149750 (D. Idaho Jan. 12, 2024). In addressing the argument that the federal court should read the petitioner's pro se state court briefing more expansively and leniently than the Idaho court had, Judge Dale stated:

> [H]ere, the question is not whether Petitioner's state court briefing can be liberally construed as raising Claim B(2). It *did* raise that claim, and Respondent does not argue otherwise.
>
> Rather, the problem for Petitioner is that, although he raised Claim B(2) to the state appellate court, he failed to support it properly as required by state law. The Idaho Court of Appeals concluded that Petitioner's claim was not supported by argument and authority—which would include legal citations *and* citations to the record. *See* Idaho App. R. 35(a)(6) ("The argument shall contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes and parts of the transcript and record relied upon."). Petitioner did not comply with this requirement.

*Id*. at *6.

Judge Dale went on to note that, if she were reading Petitioner's state court briefing in the first instance, she "indeed might conclude that Petitioner's general citation

to *Strickland* and his attempt at argument … was enough to fairly present the claim, even though he did not provide any record citations." *Id.* However, concluding that the *Taylor* case was "not one of the extraordinary cases" in which the Court could review the state court's application of a procedural bar, Judge Dale held that the generally adequate procedural rule was not rendered inadequate by virtue of the petitioner's pro se status. *Id.*

The Court finds this reasoning persuasive. This Court, like the Ninth Circuit Court of Appeals, liberally construes pro se filings. However, the state courts in Idaho have chosen a different route. In Idaho courts, litigants who represent themselves "are held to the same standards and rules as those represented by an attorney." *Merrill v. Smith*, 477 P.3d 230, 234 (Idaho 2020) (internal quotation marks omitted). "Pro se litigants are not accorded any special consideration simply because they are representing themselves," and they "are not excused from adhering to procedural rules." *Nelson v. Nelson*, 170 P.3d 375, 383 (Idaho 2007) (internal quotation marks omitted).

The wisdom of this rule is not before the Court. Sitting in habeas, where principles of finality and comity are at their zenith, this Court must respect the state courts' requirement that pro se litigants adhere to the same procedural rules—such as citation to legal authority and to the factual record—as attorneys do. The Court may not overturn the Idaho Court of Appeals' application of Idaho law in this instance.

Petitioner argues also that the Idaho Court of Appeals applied its procedural rules "in an erroneous and arbitrary manner," citing *Sivak v. Hardison*, 658 F.3d 898, 907 (9th Cir. 2011). In *Sivak*, the Ninth Circuit addressed Idaho's 42-day statute of limitations for capital defendants to file claims challenging their conviction or sentence. The court

reiterated a previous holding that the 42-day deadline is "inadequate in cases involving allegations of ineffective assistance of counsel where the petitioner 'continued to be represented by his original trial counsel'" during the limitations period. *Id.* at 906 (quoting *Hoffman v. Arave*, 236 F.3d 523, 534 (9th Cir. 2001). The Circuit held that the 42-day deadline, "as applied to" the capital petitioner in that case, was "arbitrary" and "uniquely harsh[] and is therefore inadequate." *Id.* at 906–07 (internal quotation marks omitted).

*Sivak* is readily distinguishable from Petitioner's case. First, the state court in *Sivak* had based its application of the statute of limitations on a factual error, and there is no indication here that the Idaho Court of Appeals made a similar mistake of fact. Second, it is hardly remarkable that, in a capital case, the Idaho Legislature's arbitrary choice of a 42-day deadline in a situation in which *no reasonable attorney could be expected* to challenge his own competence was inadequate to evade federal habeas review, where the rule frustrated the very purpose of that review. Here, rather than invoking a bizarre rule with no foundation in common sense, the state court merely applied its ordinary procedural rules the same way it would have done had Petitioner's briefing been written by an attorney—which the court was entitled to do.

Petitioner also relies on *Lee*, in which the Supreme Court held that, in "exceptional cases," the "exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of the federal question." 534 U.S. at 376. In *Lee*, the defendant in a murder trial sought a brief continuance to locate witnesses who had been subpoenaed and who were scheduled to testify in support of the defendant's alibi defense,

but who unexpectedly left the courthouse before they were supposed to testify. *Id*. at 365.
The oral motion for an overnight continuance was denied by the trial court because the
judge would not be available to try the case at a later date. *Id*. at 365–66.

On appeal, the state appellate court held that the motion was defective because it
was not in writing or accompanied by an affidavit, nor did it show entitlement to a
continuance, as required by state law. Thus, the state court did not address the
defendant's due process claim on the merits.

On federal habeas review, the district court and court of appeals held the claim to
be procedurally defaulted based on an adequate and independent state procedural rule.
The Supreme Court disagreed. The Court recognized that, generally, the state law
requirements for continuance motions were adequate. In Lee's particular case, however,
the rules were rendered inadequate.

The Supreme Court relied on three reasons for finding the rule inadequate as
applied to Lee. First, the trial judge denied the motion for "a reason that could not have
been countered by a perfect motion for continuance"—the trial judge's schedule. *Id*. at
381. Second, the state courts had not previously required "flawless compliance" with the
procedural rules, and "Lee's predicament … was one [the state] courts had not confronted
before." *Id*. at 382. Third, the defendant had "substantially complied" with the state's
procedural rules, "given 'the realities of trial.'" *Id*. The Court noted, "Any seasoned trial
lawyer would agree that insistence on a written continuance application, supported by an
affidavit, in the midst of trial upon the discovery that subpoenaed witnesses are suddenly

absent, would be so bizarre as to inject an Alice-in-Wonderland quality into the proceedings." *Id*. at 383 (internal quotation marks omitted).

Once again, Petitioner's case is markedly different from *Lee*. The rules applied by the Idaho Court of Appeals—the specificity and argument-and-authority requirements—are longstanding, and the state court that applied them was not facing a situation it had not previously confronted. The rule requiring written continuance motions in *Lee*—even if it had been followed—would not have resulted in a continuance for reasons outside the defendant's control. In contrast, Petitioner could have complied with the specificity and argument-and-authority rules. There was nothing prohibiting him from alleging specific errors of the post-conviction court or providing legal and record citations, and his compliance with the rule was entirely within his own control. Finally, the Idaho courts have long treated pro se and represented litigants the same, requiring all litigants to comply with procedural rules. There was no "novel" situation with respect to the rules invoked by the Idaho Court of Appeals, nor was there a fast-moving trial that rendered it nearly impossible to comply with those rules. *See Lee*, 534 U.S. at 382.

After careful consideration, the Court concludes that this is not one of the exceptional cases in which a federal court is permitted to second-guess a state court's application of its own procedural rules. Therefore, Petitioner's claims were defaulted on an adequate and independent state procedural ground.

**C.** **_Petitioner Has Not Shown an Excuse for the Procedural Default of His Claims_**

The Court's conclusion that Petitioner's habeas claims are procedurally defaulted does not end the inquiry. A federal district court can hear the merits of a procedurally defaulted claim, but only if the petitioner meets one of two exceptions: (1) a showing of adequate legal cause for the default and prejudice arising from the default; or (2) a showing of actual innocence. _Murray v. Carrier_, 477 U.S. 478, 488 (1986), _Schlup v. Delo_, 513 U.S. 298, 329 (1995).

i.    Petitioner Has Not Established Cause and Prejudice

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. _Murray_, 477 U.S. at 488. To show "prejudice," a petitioner generally bears "the burden of showing not merely that the errors [in his proceeding] constituted a _possibility_ of prejudice, but that they worked to his _actual_ and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." _United States v. Frady_, 456 U.S. 152, 170 (1982).

Ineffective assistance of counsel ("IAC") may constitute cause for a default. For example, the failure on appeal to raise a meritorious claim of trial error—or the failure at trial to preserve a claim for appeal—may render that claim procedurally defaulted. _See Edwards v. Carpenter_, 529 U.S. 446, 452 (2000) ("[I]n certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice."). However, for IAC—whether at trial or on direct appeal—to serve as cause to

excuse a default, that IAC claim must itself have been separately presented to the state appellate courts. *Id.* ("A claim of ineffective assistance ... generally must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.") (internal quotation marks and alteration omitted).

In other words, before a federal court can consider ineffective assistance of trial or direct appeal counsel as cause to excuse the default of an underlying habeas claim, a petitioner generally must have presented the ineffective assistance of counsel claim in a procedurally proper manner to the state courts, such as in a post-conviction relief petition, including through the level of the Idaho Supreme Court. If the ineffective assistance asserted as cause was not fairly presented to the state courts, a petitioner must show an excuse for that separate default, as well. *Id.* at 453 ("[A]n ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted.").

A petitioner does not have a federal constitutional right to the effective assistance of counsel during state post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 554 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993). Therefore, the general rule on procedural default is that any errors of post-conviction counsel *cannot* serve as a basis for cause to excuse a petitioner's procedural default of his claims. *See Coleman*, 501 U.S. at 752.

The case of *Martinez v. Ryan*, 566 U.S. 1 (2012), established a limited exception to the *Coleman* rule. In *Martinez*, the Supreme Court held that inadequate assistance of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's

procedural default of a claim of ineffective assistance at trial." *Id*. at 9. The *Martinez* Court

explained that the limited exception was created "as an equitable matter, that the initial-

review collateral proceeding, if undertaken without counsel or with ineffective counsel,

may not have been sufficient to ensure that proper consideration was given to a substantial

claim."[7] *Id*. at 14.

Petitioner argues that, at the very least, the default of his IAC claims should be

excused pursuant to *Martinez*. However, the default of Petitioner's IAC claims was not

caused by ineffective counsel (or lack of counsel) at the initial-review collateral

proceeding. Instead, the claims were defaulted when, *on appeal* from the dismissal of his

post-conviction petition, Petitioner did not properly raise and support his claims as

required by state law. Therefore, *Martinez* is unavailable to excuse the default of

Petitioner's IAC claims. *See Martinez*, 566 U.S. at 16 (holding that the exception does

not apply to claims defaulted in "appeals from initial-review collateral proceedings").

ii.      Petitioner Has Not Established Actual Innocence

If a petitioner cannot show cause and prejudice for his procedural default, he still

can bring the claim in a federal habeas petition if he demonstrates that failure to consider

the claim will result in a "fundamental miscarriage of justice." *Murray v. Carrier*, 477

U.S. at 496. This standard requires proof that a constitutional violation has probably

---

[7] Although *Martinez v. Ryan* can excuse procedural default and permit a petitioner to *raise* a procedurally defaulted IAC claim in federal habeas, it generally does not permit factual development outside the state court record to *prove* that IAC claim. Instead, claims that can be raised under *Martinez* remain subject to 28 U.S.C. § 2254(e)(2), which prohibits new evidence in federal habeas proceedings except in rare circumstances. *Shinn v. Ramirez*, 142 S. Ct. 1718, 1728 (2022).

resulted in the conviction of someone who is actually innocent. *Id.* Actual innocence in this context "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

A habeas proceeding is not a proper forum in which to re-litigate an entire case that has already been tried. Instead, "[w]hen confronted with a challenge based on trial evidence, courts presume the jury resolved evidentiary disputes reasonably so long as sufficient evidence supports the verdict." *House v. Bell*, 547 U.S. at 539. A persuasive claim of actual innocence must be based on new evidence, not presented to the jury, that compels the reviewing court to conclude it is now probable that no rational juror would vote to convict the defendant. *See id.* at 538-39.

In asserting actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). A procedurally defaulted claim may be heard under the miscarriage-of-justice exception only if, "in light of all of the evidence, 'it is more likely than not that no reasonable juror would have found [the petitioner] guilty beyond a reasonable doubt.'" *United States v. Avery*, 719 F.3d 1080, 1083 (9th Cir. 2013) (quoting *Schlup*, 513 U.S. at 327). Stated another way, the petitioner must show that, but for the constitutional error, *every* reasonable juror would vote to acquit.

This is a particularly exacting standard, one that will be satisfied "only in the extraordinary case." *House v. Bell*, 547 U.S. 518, 538 (2006) (internal quotation marks

omitted). Indeed, cases where the actual innocence gateway standard has been satisfied have "typically involved dramatic new evidence of innocence." *Larsen v. Soto*, 742 F.3d 1083, 1096 (9th Cir. 2013). Such evidence may include new DNA evidence, or "a detailed third-party confession," that "undermine[s] the validity of the prosecution's entire case." *Sistrunk v. Armenakis*, 292 F.3d 669, 677 (9th Cir. 2002); *see House*, 547 U.S. at 540–41. The actual innocence exception is not satisfied by evidence that is merely speculative, collateral, cumulative, or "insufficient to overcome otherwise convincing proof of guilt." *Larsen*, 742 F.3d at 1096.

A court determining whether a petitioner has established actual innocence must consider "all the evidence, old and new, incriminating and exculpatory, admissible at trial or not." *Lee v. Lampert*, 653 F.3d 929, 938 (9th Cir. 2011) (en banc) (internal quotation marks omitted). An actual innocence analysis "requires a holistic judgment about all the evidence and its likely effect on reasonable jurors applying the reasonable-doubt standard"; in other words, the federal court must "make a probabilistic determination about what reasonable, properly instructed jurors would do." *House*, 547 U.S. at 538-39 (2006) (internal quotation marks omitted).

In considering the actual innocence exception, a district court has the discretion to assess the reliability and probative force of the petitioner's proffer, including making some credibility determinations, if necessary. *Schlup*, 513 U.S. at 331–332. Although "habeas petitioners who assert convincing actual-innocence claims [need not] prove diligence to cross a federal court's threshold," a court "'may consider how the timing of the submission and the likely credibility of a petitioner's affiants bear on the probable

reliability of evidence of actual innocence.'" *McQuiggin v. Perkins*, 569 U.S. 383, 399

(2013) (statute of limitations context) (quoting *Schlup*, 513 U.S. at 332) (alterations

omitted).

Direct evidence of innocence is not necessarily required for an actual innocence

gateway claim. In rare circumstances, impeachment evidence alone can satisfy the *Schlup*

standard. *See Sistrunk v. Armenakis*, 292 F.3d 669, 676 (9th Cir. 2002). However, such

evidence must be so compelling that it "fundamentally call[s] into question the reliability

of [the petitioner's] conviction." *Id.* at 677; *see also Sawyer v. Whitley*, 505 U.S. 333, 334

(1992) ("Latter-day impeachment evidence seldom, if ever, makes a clear and convincing

showing that no reasonable juror would have believed the heart of the witness'

account.").

For example, a "detailed third-party confession" that "undermine[s] the validity of

the prosecution's entire case" would be compelling impeachment evidence. *Sistrunk v.

Armenakis*, 292 F.3d at 677; *see also Carriger v. Stewart*, 132 F.3d 463, 478 (9th Cir.

1997) (actual innocence standard met where witness whose trial testimony led to

petitioner's conviction later gave a sworn confession to the crime). However, evidence

that "would not have cast doubt on the first-hand account of the victim, who positively

identified [the petitioner] in open court" would not. *Sistrunk*, 292 F.3d at 677.

Here, Petitioner invokes the miscarriage-of-justice exception, contending that the

Court should excuse the default of his claims because he is actually innocent. In addition

to the evidence adduced at trial, Petitioner relies on the following new evidence:

MEMORANDUM DECISION AND ORDER - 29

> (1) The affidavit of Petitioner's DNA expert, which was held inadmissible in state court as unsworn. Petitioner contends the affidavit "renders the State's scientific evidence wholly unreliable";
>
> (2) The audio recording of Petitioner's discussion with Officer Yergler, in which Petitioner "maintained his innocence instead of incriminating himself";
>
> (3) Evidence that the victim's description of her rapist, in her initial statements to police, allegedly did not match Petitioner;
>
> (4) Petitioner's assertion that, at trial, the victim actually identified Petitioner's counsel as her rapist, not Petitioner himself; and
>
> (5) Evidence that Gayanne Windedahl had a motive to implicate Petitioner as the person she saw leaving the bedroom with the victim still inside.

Dkt. 14 at 29.

The Court concludes Petitioner has not made the extraordinary showing required for application of the miscarriage-of-justice exception to procedural default. Even if all of the evidence upon which he now relies had been introduced at trial, the jurors still could have believed the victim's detailed testimony that Petitioner—a man she had met before—had raped her in her father's bedroom. D.V.'s detailed testimony easily could have convinced a reasonable juror that Petitioner was guilty beyond a reasonable doubt. Petitioner's evidence that he was not the man who raped D.V., and that D.V. identified trial counsel as her rapist, is not credible. The new evidence, taken collectively, certainly "would not have cast doubt on the first-hand account of the victim, who positively identified [Petitioner] in open court" as her rapist. *See Sistrunk*, 292 F.3d at 677.

Because Petitioner has not shown, by a preponderance of the evidence, that every reasonable juror would vote to acquit, the actual innocence exception does not excuse the default of Petitioner's claims.

## CONCLUSION

For the reasons set forth above, the Court concludes that all of Petitioner's claims are procedurally defaulted without excuse and that Claim IV is noncognizable. Thus, the Court must dismiss the claims with prejudice.

## ORDER

**IT IS ORDERED:**

1.     Respondent's Motion to File Oversize Reply Brief (Dkt. 20) is GRANTED.

2.     Respondent's Motion for Summary Dismissal (Dkt. 10) is GRANTED, and the Petition is DISMISSED with prejudice.

3.     The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Habeas Rule 11. If Petitioner wishes to appeal, he must file a timely notice of appeal with the Clerk of Court. Petitioner may seek a certificate of appealability from the Ninth Circuit.


DATED: March 11, 2024

Honorable Debora K. Grasham
United States Magistrate Judge